International & Great Northern Railroad Company v.
Mrs. A. M. Bearden et al.

Decided December 17, 1902.

**1.—Assumed Risk—Dangerous Switch Stand.**

Evidence considered in case of a car-inspector who, while clinging to the side of a moving car in the yards where he usually worked, was struck by an unlighted switch stand, dangerously near the track, after having just warned a companion of a similar peril, and held not to show, as matter of law, contributory negligence or assumption of the risk.

**2.—Negligence—Customary Method of Work.**

In a suit for negligently causing death of a car inspector, struck by a switch stand while clinging on the side of a moving car, evidence that inspectors were accustomed so to do when, as in this case, the train was moved before completing its inspection, was admissible.

**3.—Negligence—Switch Stand—Evidence—Other Switches.**

On the issue of negligence in maintaining a switch stand unlighted and dangerously close to the track, it was permissible to prove the kind and location of other switches in the yards, and the intention of the yard master to replace the one in question with such other kind.

**4.—Evidence—Knowledge of Peril—Conclusion of Witness.**

A witness should not be permitted to testify that the injured person was familiar with the yard, switches, and switch stands, and their proximity to the track, that being a conclusion to be drawn from the facts.

**5.—Negligence—Contributory Negligence—Charges.**

See instructions held proper, and requested instructions properly refused because given, in substance, in the court's charge.

Appeal from the District Court of Williamson. Tried below before Hon. R. L. Penn.

*S. R. Fisher* (*N. A. Stedman* of counsel), for appellant.—[The following are the assignments of error in appellant's brief asserting error in the charge.]

11. The court erred in its definition of negligence, which omitted all idea of legal duty and which would have been corrected by special instruction number 4 asked by defendant, but refused by the court.

Statement: The court defined negligence as follows: "By the term 'negligence' as used in this charge is meant the doing of that which a person of ordinary prudence would not have done under the same or similar circumstances, or the failure to do that which a person of ordinary prudence would have done under the same or similar circumstances."

Defendant requested but the court refused the following special instruction: "Negligence is the failure to do what an ordinarily reasonable and prudent person, resting under a legal duty to do, would have done under the circumstances of the situation, or the doing or what such person, under the existing circumstances, would not have done. The duty is dictated and measured by the exigencies of the occasion."

12. The court erred in not defining contributory negligence, and

the jury was left without any guide for determining what would, under the facts, constitute contributory negligence on the part of plaintiff's decedent. This omission in the charge would have been cured by giving special instruction number 5, requested by defendant.

Statement: The court did not define contributory negligence. Defendant requested but the court refused the following special instruction: "Contributory negligence is the failure on the part of the person killed to exercise reasonable and ordinary care, which concurs with the negligence of the defendant in producing the death, and but for which the death would not have occurred."

13. The court erred in attempting to state the law as to the burden of proof resting upon the defendant, and in particular in regard to the defense of assumed risk. W. B. Bearden, when he entered the service, assumed all the risks ordinarily incident thereto, including the risk or danger, while riding cars down the track, of coming in contact with an upright switch stand maintained near the track, if he knew of its character and location prior to the accident, or if its location and character were obvious, open to ordinary observation, and he had had opportunity to observe the same, and it devolved upon plaintiffs, especially after the defendant had introduced evidence showing that the deceased knew the character and location of the switch and the danger to which it exposed him in attempting to ride cars down the track by the switch stand, to prove facts showing that he had not assumed the risk because of ignorance of the danger to be apprehended from the switch stand as located; and further, that the danger was not open to ordinary observation while engaged in the performance of the duties of his employment.

Plaintiffs' pleadings exposed Bearden to the suspicion of negligence on his part proximately causing his death, and also justified the inference that he had assumed the risk of riding the cars down the track. The testimony of plaintiffs' own witnesses, Brooks and Koeforth, at least tended to prove that Bearden knew the character and location of the switch stand by which he met his death, its proximity to the track and the danger to which any one attempting to ride the cars down the track and beyond the switch stand would be exposed, and the burden of relieving Bearden of the imputation of contributory negligence and of assumed risk rested upon the plaintiffs and not upon the defendant, and plaintiffs offered no evidence to remove the presumption of negligence and assumption of risk raised by their own testimony. If the rule applicable to the defense of contributory negligence is applicable to the defense of assumed risk, as the court in its charge holds, then it is clear that error was committed by the court in imposing the burden upon the defendant under the facts of this case.

The court charged the jury as follows: "The burden is upon the plaintiffs to show by a preponderance of the evidence negligence on the part of defendant entitling them to a recovery. The burden of proof is likewise upon the defendant, in case negligence on its part has been shown, to show by a preponderance of the evidence that the said W. B.

Bearden was guilty of negligence which proximately caused or contributed to his death or that he assumed the risk incident to the act in the doing of which he lost his life."

Authorities: Railway v. Sheider, 88 Texas, 152; Railway v. Reed, 88 Texas, 439; Railway v. Martin, 63 S. W. Rep., 1098; Railway v. Lewis, 63 S. W. Rep., 1091.

14. The court erred in the second paragraph of its charge purporting to give the law of the case, in attempting to define the duty of the defendant in furnishing its employes a place and appliances reasonably safe for performing the duties for which they were engaged, and in stating, without qualification, that a failure to exercise ordinary care in such respect would be negligence on defendant's part, (a) because the court improperly submitted to the jury for its consideration as against the defendant the issue whether it was negligence on the part of the defendant to erect and maintain in its yard near its tracks an upright switch stand at a place by which cars were constantly passing and on the sides of which employes of defendant were frequently required to be in the performance of their duties, and whether said switch stand was too near to defendant's track and was a dangerous obstruction to persons whose duties required them to be upon the sides of cars passing over said track and by said switch stand, if said facts were known to defendant—the law not predicating negligence upon the location and maintenance of a switch stand at any particular place upon its premises, the defendant having the right to locate, erect and maintain a switch stand in an upright position in its yard at Taylor, near its track and unlighted, as against an employe whose duties required him to be in the yard and about the switch stand, if, prior to the accident of which complaint is made, he knew, or in the prosecution of his duties must necessarily have known, of its location and the danger to which it would expose him in attempting to ride by the same while clinging or hanging to the side of a car; (b) because there was nothing in the evidence proving or tending to prove that it was any part of the duty of the deceased or other employes to ride the cars down the track; (c) because there was no evidence whatever proving or tending to prove that the practice or custom of employes to ride the cars down the track and by the switch stand was known to the defendant, or any of its officers; and (d) because the jury, from said paragraph, which was independent of and separate and distinct from other paragraphs in which the court attempted to state the circumstances under which the defendant would be relieved from liability, and which makes no reference to said paragraphs, might properly conclude that they were authorized to infer that a finding by them of negligence on the part of defendant in the particular complained of would authorize a recovery, without reference to the further inquiry whether such negligence caused the death of plaintiff's decedent. The court nowhere states any limitation or restriction upon the rule announced in said paragraph until the fifth paragraph of the charge,

which is entirely separate and distinct from and not in anywise referred to in said second paragraph.

Statement: The second paragraph of the charge is as follows: "It was the duty of the defendant railroad company to use ordinary care to furnish its employes a place and appliances reasonably safe for performing the duties in which they were engaged, and a failure to exercise such degree of care in this respect would be negligence on defendant's part."

The fifth paragraph of the charge, separate and distinct from the second paragraph, and which makes no reference thereto, is as follows:

"Now, if you find from a preponderance of the evidence that the said W. B. Bearden was in the employ of the defendant as a car inspector, and that on said April 24, 1900, while engaged in the performance of his duties as such car inspector, he was riding upon the side of a car in a train which he was engaged in inspecting, and while so riding upon the side of such car he came in contact with an upright switch stand maintained by defendant in its said yards and was knocked down and under said train and killed, and that said switch stand was located too near the track upon which said train was moving and formed a dangerous obstruction to employes of defendant, if any there were, whose duties required them to be on the sides of cars passing on said track and by said switch stand, and that defendant in locating and maintaining such switch stand too near said track, if you find that it did so locate and maintain it, was guilty of negligence, as the term negligence has been hereinbefore defined to you, and that such negligence on the part of defendant, if you find there was such negligence on its part, was the proximate cause of the death of the said W. B. Bearden, then you will find for the plaintiffs, unless you further find that the said W. B. Bearden was himself guilty of negligence which caused or contributed to his death, or that the said W. B. Bearden knew that said switch stand was located too near such track, in either of which events plaintiffs can not recover."

No evidence was adduced proving or tending to prove that it was any part of the duty of the deceased or other employe to ride the cars down the track. There was no evidence offered proving or tending to prove that the practice or custom of employes to ride the cars down the track and by the switch stand was known to the defendant or any of its officers.

Authorities: To the effect that negligence can not be predicated on the location of a switch stand. Railway v. Knight, 91 Texas, 660; same case, 45 S. W. Rep., 556; Railway v. Rogers, 91 Texas, 52; same case, 40 S. W. Rep., 596. To the effect that where paragraphs of a charge are separate and distinct, error contained in one is not corrected by other paragraphs to which no reference is made. Baker v. Ash, 80 Texas, 361; Railway v. White, 33 S. W. Rep., 322; Harter v. City, 36 S. W. Rep., 294; Railway v. Taylor, 44 S. W. Rep., 892; Railway v. Kimball, 43 S. W. Rep., 1014.

15. The court erred in attempting to give the law with reference to assumed risk, the charge nowhere advising the jury as to what is an

assumed risk and what risks are assumed by an employe engaging in the service. This vice in the charge was called to the attention of the court in special instructions numbers 6, 7, and 8, requested by defendant and refused by the court.

Statement: The seventh paragraph of the charge, which contains the only reference to assumed risk, is as follows:

"You are further instructed that if the said W. B. Bearden knew the character and location of said switch stand and that it was dangerous to pass the same while clinging or hanging on to the side of a moving car, or if he in the exercise of ordinary care in the performance of his duties as a car inspector would necessarily have known the character and location of said switch stand and that it was dangerous to attempt to pass the same while clinging or hanging to the side of a moving car, then, in either of said events, you are instructed that the said W. B. Bearden assumed all the risks incident to his attempt in such manner to pass the said switch stand, and that in either of said events the plaintiffs can not recover, even though you may further find that the said W. B. Bearden believed, at the time he so attempted to pass the said switch stand, that he, by the exercise of care proportionate to the danger, could pass the said switch stand without injury."

The defendant requested but the court refused special instructions 6, 7 and 8, which are as follows:

6. "The jury are instructed that when W. B. Bearden accepted service with the defendant as a car inspector he assumed all of the risks ordinarily incident to that service, and the defendant would not be liable to plaintiffs for his death resulting from unavoidable accident, nor for his death resulting from his own negligence which contributed thereto, nor for his death resulting from a risk assumed by him. If, therefore, you believe from the evidence that Bearden's death resulted from any one or more of the ordinary risks incident to the pursuit of his employment, or from inevitable accident, or from his own negligence which contributed directly thereto, or from an assumed risk then you will find for the defendant."

7. "You are instructed that persons who engage in a given employment assume the risks ordinarily incident to that employment. If, therefore, you believe from the evidence that the defects, if any, existing in the switch stand and the danger to be apprehended therefrom were apparent, and that the said W. B. Bearden voluntarily continued in the discharge of his usual duties as car inspector without protest or objection, and that he knew, or by the exercise of ordinary care and observation might have known, that such switch stand was dangerous, then you are instructed that plaintiffs can not recover, and you will return a verdict for the defendant."

8. "The jury are instructed that if an employe of a railroad company discovers that a switch stand in use in the line of his employment is dangerous because too close to the track, or for other reasons, and does not stop running by the same while clinging to the side of a mov-

ing car, and give notice thereof to the company or its agents and wait until the dangerous condition is remedied, but continues to exercise his employment with the switch stand in such condition without protest or objection, and is killed by reason of its being in such dangerous condition, then the company will not be liable. If, therefore, you believe from the evidence that prior to his death the said W. B. Bearden was well acquainted with defendant's tracks, switch stands, etc., at the point where he was killed, and knew that the switch stand by which he was killed was too near the track, and that on account of such proximity there was danger attending the riding by the switch stand while clinging to the side of a moving car; and if you further believe from the evidence that the said Bearden failed to give defendant, or its agents, notice of such defects and danger, and continued in the performance of his usual duties without protest or objection, and was killed while riding by the switch stand while clinging to the side of a car, then you are instructed that plaintiffs can not recover, and you will return a verdict for the defendant."

16. The court erred in the fifth paragraph of its charge, in particular in so much thereof as reads as follows: "Now, if you find from a preponderance of the evidence that the said W. B. Bearden was in the employ of defendant as a car inspector, and that on said April 24, 1900, while engaged in the performance of his duties as such car inspector, he was riding upon the side of a car in a train which he was engaged in inspecting, and while so riding upon the side of such car he came in contact with an upright switch stand maintained by the defendant in its said yard and was knocked down and under said train and killed, and that such switch stand was located too near the track upon which said train was moving and formed a dangerous obstruction to employes of defendant, if any there were, whose duties required them to be on the sides of cars passing on said track, and by said switch stand, and that defendant, in locating and maintaining such switch stand too near said track, if you find that it did so locate and maintain it, was guilty of negligence, as the term negligence has been hereinbefore defined to you, and that such negligence on the part of the defendant * * * was the proximate cause of the death of said W. B. Bearden, then you will find for the plaintiffs, unless" * * * because the same was a charge upon the weight of the evidence and invaded the province of the jury in finding a material fact, viz: That the duties of plaintiffs' decedent required him to be on the sides of cars passing on said track and by said switch stand. The term in said paragraph "if there were," following the words "employes of defendant," suggests only an inquiry as to whether defendant had any employes, and can not be applied as descriptive of employes whose duties required them to be on the sides of cars, and is not the equivalent of the following: "That said switch stand formed a dangerous obstruction to employes of the defendant, whose duties required them to be on the sides of cars passing on said

track and by said switch stand, if from the evidence you find there were such employes."

17.   The court erred, in the concluding part of said fifth paragraph of its charge and in the seventh paragraph thereof, wherein it was attempted to state what would relieve defendant from liability notwithstanding its negligence, in omitting to instruct the jury that, if the switch stand, its proximity to the track and the danger to be apprehended therefrom in passing the same while clinging to the side of a moving car was apparent, open, obvious to ordinary observation, there could be no recovery, which vice in the charge of the court was specially called to its attention by special instruction number 7, asked by the defendant and refused by the court.   The charge did not, as it should have 'done, present to the minds of the jury the idea that plaintiffs' decedent must take notice of the kind and location of structures around which his work necessarily called him, when the kind, the location, and the danger to be apprehended therefrom while engaged in the performance of his duties are obvious and plain to ordinary observation.

18.   The court erred in the sixth paragraph of its charge in attempting to enumerate the facts which might constitute contributory negligence on the part of said W. B. Bearden and relieve defendant from responsibility notwithstanding negligence on its part, because said charge did not advise the jury that, if the location of the switch stand and the danger to which it exposed an employe passing the same while clinging to the side of a car were obvious and open to ordinary observation, there could be no recovery.   This error was called to the attention of the court in special instruction number 7, requested by defendant and refused by the court.

19.   The court erred in the seventh paragraph of its charge in attempting to state what facts, if found by them, would justify them in finding that the said Bearden had assumed the risk incident to his attempt to pass the switch stand while clinging to the side of a car, because said paragraph omitted to advise the jury that, if the character and location of the switch stand and its danger was apparent, obvious and open to the ordinary observation of W. B. Bearden while engaged in the performance of his duties, there could be no recovery.

20.   The court erred in refusing to give special instruction number 6, asked by defendant.

21.   The court erred in refusing to give special instruction number 7, asked by defendant.

22.   The court erred in refusing to give special instruction number 8, asked by defendant.

Proposition:   The charge of the court omitted to state that the defendant, even if guilty of the negligence charged, would be relieved of liability if the location of the switch stand and the danger to which it exposed an employe passing the same while clinging to the side of a car were obvious and open to ordinary observation, if the character of the switch stand and the danger in attempting to ride the cars down the

track would necessarily, in the exercise of ordinary care, come to his attention; in other words, that the law imposed upon him for his own protection the duty of taking notice of the kind and location of the structures around which his work called him, when the kind and location of the structures and danger to be apprehended therefrom while engaged in the performance of his duties were obvious and plain to ordinary observation.

23.. The court erred in the tenth paragraph of its charge in attempting to advise the jury as to the measure of damages in cases of this character.

Statement: The court charged the jury as follows: "If you find for the plaintiffs, Mrs. A. M. Bearden, Chester A. Bearden, Katie May Bearden, Johnnie Lee Bearden, and Jessie B. Bearden under the foregoing instructions, then you will find for them in such sum as will, in your judgment from the evidence, fairly and justly compensate them for the actual pecuniary loss sustained by them in the death of said W. B. Bearden, and you will then apportion such sum between the plaintiffs, giving to each plaintiff such sum and no more as will fairly and justly compensate such plaintiffs for such actual pecuniary loss sustained by such plaintiffs. By the term "actual pecuniary loss," as used above, is meant such sum, if paid now and in a lump sum, would be equal in value to the aid or benefits, in a pecuniary way, if any, which the said W. B. Bearden would have bestowed upon plaintiffs had he lived. Nothing can be recovered by plaintiffs as compensation for grief on account of the death of said W. B. Bearden or on account of the loss of his society."

24. The court erred in refusing to give special instruction number 4, asked by the defendant.

Defendant's fourth special instruction correctly defined negligence, and would have corrected the definition given by the court.

25. The court erred in refusing to give special instruction number 5, asked by the defendant.

The court having failed to define contributory negligence, should have given the requested instruction correctly defining it.

*John W. Parker,* for appellees.

STREETMAN, Associate Justice.—Mrs. A. M. Bearden was the wife of W. B. Bearden, who was killed in the yards of appellee at Taylor, Texas. She brought this suit for herself and for the use of her children, except Mrs. Pipkin (who was made defendant) to recover damages on account of his death. Mrs. Pipkin and her two other married daughters disclaimed any interest in the suit and were dismissed. There seem to have been two trials of the case, both resulting in verdicts for plaintiffs, the last judgment, from which this appeal is taken, being for $5250, apportioned as follows: Mrs. A. M. Bearden, $2000; Chester A.

Bearden, $250; Katie May Bearden, Johnnie Lee Bearden, and Jessie B. Bearden, each $1000.

It was alleged in substance that deceased was employed by appellant as night car inspector at Taylor, Texas, and that his duties required him to inspect all cars coming into said station at night; and in the performance of his duties at times it became necessary for him to get on such cars while they were being moved about in the yards before the inspection of a train was finished, so as to follow up the train and inspect it. That on the night of April 24, 1900, while he was engaged in the inspection of a freight train, the same was moved before the inspection was finished; and in order to follow it up, he hung on the side of one of said cars, and while he was hanging on the same he was brought in contact with an upright switch stand and thereby knocked from said car, and fell under its wheels, which ran over and instantly killed him.

It was alleged that said switch stand was unlighted and was too close to the track, and was too high, and presented a dangerous obstacle to persons whose duties required them to be upon the sides of moving cars, and that in this respect appellant was guilty of negligence, which caused the death of said Bearden.

There were also proper averments of the elements of damage.

Appellant's answer contained a general denial and special pleas setting up contributory negligence and assumed risk. At the close of plaintiff's evidence, appellant moved the court to instruct a verdict for defendant.

The defendant then, at the close of the trial, requested a peremptory instruction, and after the verdict made a motion to enter judgment for defendant non obstante veredicto.

The adverse ruling of the court in each of these respects is complained of, and appellant in this court earnestly contends that the evidence conclusively sustains the defenses of contributory negligence and assumed risk.

The evidence fully sustains the allegations of the petition with reference to the negligence of appellant, and shows that it was the cause of Bearden's death; and that plaintiffs sustained damages to the amount found by the verdict.

The only serious question of fact is whether the evidence showing contributory negligence of the deceased, or his assumption of the risk, was so conclusive as to require us to reverse the judgment.

All of the witnesses who testified, except Mrs. Bearden, were either at the time of the trial or at the time of the accident employes of appellant.

It was shown that on the night of the accident it was dark and raining. Bearden and the witness Brooks (his assistant) had inspected the south side of the train, and about half of the north side, when the train was moved, and they hung on the side of the cars. There were two unlighted switch stands not far apart in the direction they were going. Bearden had on a slicker and had a torch in his hand. He seems to have passed

the first switch stand, but in passing the second he was struck by the switch target, knocked from the car, run over, and instantly killed.

The principal question is whether Bearden knew of the dangerous proximity of this switch stand to the track, and with such knowledge, assumed the risk of being struck by it in the performance of his duties; or whether with such knowledge, his conduct in attempting to pass it on the cars was contributory negligence.

The switch stand was located some distance from the depot, and about 500 yards from what is called the "switch shanty," where deceased stayed when not inspecting trains. It had been placed there about a year and a half before the accident. Deceased had been working in the same capacity ever since it had been placed there, but worked only at night. His duties required him to be in all parts of the yards at different times. Aside from these facts there was no evidence, except that of Brooks, which we shall presently discuss, to show his knowledge of the location of the switches, but only the inspection of the cars.

Brooks testified by deposition that he was just behind Bearden assisting him to inspect the train, and after they had caught on the sides of the cars, and just before they reached the first switch stand, Bearden warned him to "look out for the blind switch," and that he (witness) dropped off the car and walked around the first switch stand and caught another car, but Bearden hugged close to the car and passed this switch stand safely, and when witness had nearly reached the second blind switch stand, he saw that Bearden had dropped down to the ground, and was inspecting the cars as the train moved by. That witness then jumped off, and just as he did so Bearden caught another car, and as he passed the second switch stand it struck him, and witness presently went there and found his dead body.

It will be seen that this evidence, if believed by the jury, would have tended strongly to show contributory negligence on the part of the deceased, or at least such knowledge on his part of the dangerous location of the switch stand as would imply an assumption by him of the risk. We do not believe however, that it is so conclusive upon these questions, especially when considered in connection with other evidence, as to require us to set aside the judgment of the lower court. The testimony of Brooks, if true, may show that the deceased knew that the switch stand was unlighted, and that it was situated so near the track as to render some degree of care necessary in passing it; but it does not necessarily show that he knew it was so close as to be dangerous if proper care was exercised. It was the duty of his employer to provide a reasonably safe place for the performance of his work; and in the absence of actual knowledge on his part, he had a right to presume that this duty had been performed.

The evidence of appellant's civil engineer, who made an accurate measurement, shows that the distance from the side of a stock car to the target on this switch stand was 18½ inches; and the distance from the

nearest rail to the center of the stand is 55 inches. These are probably the correct distances.

To show that the deceased, notwithstanding his duties in the yards, may not have known the distance from the track, we call attention to the evidence of some of the other witnesses. The assistant inspector, Brooks, testified that he thought the switch stand was about 45 inches from the nearest rail.

T. D. Dunn, the yardman who put in the switch in question, thought it was about 13 inches from the target to a car on the track.

Martin, the switchman in charge of the yards, said: "The distance from the switch stand at which Bearden is said to have been killed to track No. 1, is about 15 or 16 inches."

George Willis testified: "I don't know the distance, though I am yardmaster, and have been for about fifteen or sixteen years."

The testimony of these four witnesses, all of whom had about the same opportunity as Bearden to learn of the proximity of the switch stand to the track, one testifying that he did not know, and the others showing by their incorrect estimates that they did not know the distance, affords a demonstration of the fact that Bearden may not have known the distance. Some of these witnesses also testify that they supposed it was far enough to "clear a man" on the side of a car; and this supposition, which the law authorized in the absence of knowledge, may have been in the mind of the deceased.

Taking these facts into consideration, even accepting as true the testimony of Brooks, we can not say that the finding of the jury was unsupported by the evidence. It may be further true that the jury did not believe that part of Brooks' testimony which tended to show Bearden's knowledge of the danger. There were circumstances which might have warranted them in discrediting this evidence. He was an employe of defendant; this part of his testimony was given by deposition; and if not unreasonable, it was, to say the least, somewhat remarkable that the deceased with his last words should warn Brooks against the danger of the blind switch, and the next instant meet his own death by disregarding the danger.

While the evidence, upon the whole, tended rather strongly to show knowledge on the part of the deceased, yet it was not so conclusive as to warrant us in setting aside the judgment.

There was no error in permitting proof that deceased and other inspectors had for many years been accustomed to hang on the sides of moving cars when a train was moved before an inspection was finished. It served to show that deceased was performing his work in the usual and customary manner; and the long existence of the custom authorized the jury to presume that the company had notice of it. Lawson, Usages and Customs, sec. 21; O'Mellia v. Railway, 21 S. W. Rep., 507.

It was proper to show the kind and location of other switch stands in the yards at Taylor; and also that the switch stand where deceased was killed was used because there were no others on hand at the time, and

that it was the intention of defendant's yardmaster, when he placed it there, to replace it with another kind of stand as soon as possible. This evidence was pertinent to show whether it was necessary to maintain the switch stand as it was, and whether defendant had used ordinary care to provide a reasonably safe place for deceased to work.

Appellant offered to prove by certain witnesses that Bearden "was familiar with the yard and knew the tracks, structures, switches and switch stands, and their location and proximity to the track," which evidence was excluded. Appellant was permitted to show what opportunities deceased had to acquire such familiarity, and every fact indicating that he had such knowledge. Whether he actually had such knowledge was a conclusion to be drawn, not by the witnesses, but by the jury.

We have carefully examined the assignments relating to the charge of the court, and find no error. The law of the case was correctly presented, and the special charges, so far as they were correct, were embodied in the instructions given.

There being no error in the judgment, it is affirmed.

*Affirmed.*

Writ of error refused.